## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**REGENA BISHOP**                                                                                      **PLAINTIFF**

**V.**                               **No. 4:24-CV-00243-LPR-ERE**

**MARTIN O'MALLEY, Commissioner**
**Social Security Administration**                                                     **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("RD") has been sent to United States District Judge Lee P. Rudofksy. You may file objections if you disagree with the findings and conclusions set out in the RD. Objections should be specific, include the factual or legal basis for the objection, and must be filed within fourteen days. If you do not object, you risk waving the right to appeal questions of fact, and Judge Rudofsky can adopt this RD without independently reviewing the record.

## I.    Introduction

On February 7, 2020, Regena Bishop filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on October 1, 2017. *Tr. 67*. That application was denied initially and upon reconsideration. *Id.* After conducting a hearing, an Administrative Law Judge ("ALJ") found that Ms. Bishop was not disabled. *Tr. 67-79*. On April 6, 2022, the Appeals Council denied Ms. Bishop's request for review. *Tr. 5-8*.

Ms. Bishop appealed to this Court.[1] *Tr. 858-861*. On December 29, 2022, the Court reversed and remanded the case.[2] *Tr. 861*. The Appeals Council returned the case to an ALJ to further consider both the medical opinion evidence and Ms. Bishop's residual functional capacity ("RFC"). *Tr. 879-880*.

The same ALJ conducted a second hearing, consolidated Ms. Bishop's applications, and issued a written decision on January 10, 2024, denying Ms. Bishop's application for benefits. *Tr. at 763-791*. That decision stands as the Commissioner's final decision. Ms. Bishop again requests judicial review.

For the reasons explained below, the Court should reverse the ALJ's decision and remand for further review.

## II.    The ALJ's Decision[3]

The ALJ found that Ms. Bishop, who was 45 on the alleged onset date, but turned 50 on February 28, 2022, engaged in substantial gainful activity ("SGA") during the following periods: March through May 2022; October through December

---

[1] Ms. Bishop filed a concurrent application for Title II disability benefits on May 18, 2022. *Tr. 763*.

[2] See *Bishop v. SSA*, 3:22-cv-135-DPM (E.D. Ark. Dec. 20, 2022) at *Docs. 15 & 16*. The parties agreed to a sentence four remand.

[3] An ALJ must follow the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

2

2022; and January through May 2023. *Tr. 766, 769, 790*. Therefore, at step one, the ALJ found that from Ms. Bishop's 50th birthday (Feb. 28, 2022) until the ALJ's January 10, 2024, written decision, she was not disabled.[4]  The ALJ next determined that there have been continuous 12-month periods when Ms. Bishop did not engage in SGA before her 50th birthday, and he proceeded through the rest of the analysis for those periods. *Tr. 769-793*. At step two, the ALJ determined that Ms. Bishop has the following severe impairments: Addison's disease; degenerative joint disease of the shoulder; mild degenerative disc disease of the lumbar and thoracic spine; migraine headaches; anxiety disorder; and depressive disorder. *Tr. 769-770*.

At step three, the ALJ found that Ms. Bishop did not have an impairment or combination of impairments meeting or medically equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. Next, the ALJ determined that Ms. Bishop's RFC was sedentary work with the following limitations: (1) only occasional stooping, kneeling, crouching, and crawling; (2) no more than occasional overhead reaching; (3) only moderate background music in the work setting; (4) can

---

[4] Ms. Bishop's age puts her in the "younger person" category for the purposes of benefits adjudication. On February 28, 2022, she turned 50, which is "approaching advanced age" category. The ALJ admits that at age 50, the Medical-Vocational Guidelines would render her disabled based on her age, education, experience, and RFC. The Medical-Vocational Guidelines are a set of rules that render a finding of disabled or not disabled based on a claimant's specific vocational profile. 20 CFR Part 404, Subpart P, Appendix 2; SSR 83-11. Since the ALJ found that Ms. Bishop did not have a continuous 12-month period of not performing SGA after age 50, she was not disabled as of that date. Whether her work met the requirements for SGA after age 50 is a pivotal issue in this case.

only perform simple tasks but has the ability to exercise proper judgment in performing those tasks; and (5) only routine changes in the workplace. *Tr. 774-775*.

At step four, the ALJ determined that Ms. Bishop is unable to perform her past relevant work. *Tr. 789*. At step five, relying upon testimony from a Vocational Expert ("VE"), the ALJ found that, considering Ms. Bishop's age, education, work experience, and RFC, significant numbers of jobs existed in the national economy that she could perform, such as final assembler and polisher. *Tr. 790-791*. Therefore, the ALJ found that Ms. Bishop was not disabled from the alleged onset date (October 1, 2017) through the date of the written decision (January 10, 2024). *Id.*

## III.   Discussion

### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 104 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B.   Ms. Bishop's Arguments for Reversal

Ms. Bishop contends that there is not substantial evidence supporting the ALJ's decision, because the ALJ: (1) erred in finding that she engaged in SGA in 2022 and 2023; (2) relied on an RFC that did not incorporate all of her limitations; (3) failed to properly analyze medical opinion evidence; and (4) erred at step five. I find support for reversal with respect to Ms. Bishop's first argument, and the following analysis is limited to that argument for reversal.[5]  *Tr. 785-789*.

---

[5] While I decline to draw firm conclusions about any argument other than Ms. Bishop's first one, her other arguments appear *not* to provide a basis for reversal. Ms. Bishop's arguments are based on multiple treating physicians' opinions that her medical impairments would seriously compromise her ability to perform in a competitive work environment. *Tr. 734-735, 1892-1896, 2118-2219.* However, the ALJ evaluated these opinions thoroughly and gave good reasons for finding this evidence not entirely persuasive. *Tr. 788-789.* For example, Ms. Bishop treated her

### C.    Analysis

The issue is whether Ms. Bishop after turning 50 in February 2022, had any continuous 12-month periods when she was not engaging in SGA. If so, Ms. Bishop would be classified as disabled under Medical-Vocational Guidelines Rule 201.14.[6] Resolution of this issue requires analysis of the SGA presumption, how it can be rebutted, and Ms. Bishop's evidence related to her work activity.

At step one of the sequential analysis, the claimant has the burden of showing she is not performing SGA. *See* 20 C.F.R. § 404.1571; *Petersen v. Chater*, 72 F.3d 675, 677 (8th Cir. 1995), There are several factors that must be considered in determining whether an individual has the skills and ability to work at SGA level, including the nature of the work, the performance level, the existence of special conditions, and the time spent at work. 20 C.F.R. § 404.1573. There are also minimum earnings requirements for SGA. These SGA guidelines operate as a presumption. See *Cooper v. Secretary of HHS*, 919 F.2d 1317 (8th Cir. 1990); *Katz v. Secretary of Health and Human Servs.*, 972 F.2d 290, 293 (9th Cir. 1992); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1356 (10th Cir. 1987) (noting that there is a

---

conditions conservatively, responded positively to treatment, had relatively unremarkable clinical exams, and was able to perform a variety of daily activities. *Doc. 12, at 12-15.*

    [6] https://www.ssa.gov/OP_Home/cfr20/404/404-app-p02.htm; 20 CFR Part 404, Subpart P, Appendix 2; SSR 83-11. Once you reach the age of 50 (and have no transferable skills, or education that allows direct entry into skilled work), the Guidelines direct a finding of "disabled" at the sedentary exertional level. *Id.*

presumption of substantial gainful employment if the applicant earns over the amount specified in the guidelines); 20 C.F.R. §§ 404.1574(b)(2)(ii), 404.1575(b)(2). A claimant may rebut the presumption by showing that she worked in a sheltered or special environment. 20 C.F.R. § 404.1574(a)(2) and (3). If a claimant had special accommodations from her employer that others were not provided, it may be considered a sheltered or special environment. Such a showing has been held sufficient to rebut the presumption. *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006); 20 C.F.R. § 416.973(c) (special conditions present to rebut presumption).

Ms. Bishop worked as a substitute teacher for Jonesboro school in the years before her application. However, she reported that that due to fatigue, all-over pain, brain fog, and headaches, all stemming from her Addison's disease,[7] she could no longer perform that job. *Tr. 815-820*. Her employer accommodated her by allowing her to serve as monitor for students assigned to in-school suspension. *Tr. 810-812*. She monitored the students, made sure they were not disruptive, and made sure they did their schoolwork. *Id*.

---

[7] Addison's disease, also called adrenal insufficiency, is an uncommon illness that occurs when the body doesn't make enough of certain hormones. In Addison's disease, the adrenal glands make too little cortisol and, often, too little of another hormone, aldosterone. Addison's disease can affect anyone and can be life-threatening. Treatment involves taking hormones to replace those that are missing. https://www.mayoclinic.org/diseases-conditions/addisons-disease/symptoms-causes/syc-20350293.

Ms. Bishop filled out a Work Activity Report in 2022, stating that she had no special accommodations at work. *Tr. 1100-1110*. She filled out another Work Activity Report in 2023, and noted the following work accommodations: reduced hours during weeks when she was sick; permission to sit, stand, or prop her feet up as needed; the ability to have someone substitute for her so she could go to the lounge and rest; permission to perform inside duties that were easier than outside duties; and assignment of easier classrooms or fewer job duties. *Tr. 1150-1157*. Other workers in the school were not allowed these accommodations. *Tr. 812*.

Suzanne Faught became principal at the school in 2023. *Tr. 1189*. In a December 1, 2023 letter, she explained that the school allowed Ms. Bishop special accommodations since at least August 2023, when she started working for Principal Faught. *Id*. Principal Faught wrote that, in the future, Ms. Bishop would not be allowed the accommodations and her work hours and pay would be significantly reduced. *Id*. It was unclear from the letter how long Ms. Bishop had received the accommodations or if she performed her job satisfactorily given the accommodations.

The ALJ gave little attention to this letter and to Ms. Bishop's statements about the 2023 Work Activity Report. At the hearing, the ALJ told Ms. Bishop: "I really only got about three questions written down I want to ask you." *Tr. 809*. He then asked if her duties had changed at work since the first hearing in 2021 (he

administered both hearings). He said, "Just in two sentences, and then we got to move on, what would I see you doing on your current assignment at the school?" *Tr. 811*. He then filled in the answers for Ms. Bishop, stating, "this is my words" and "I raced through that." *Tr. 811*. Ms. Bishop answered this brief line of questioning by saying that she was allowed to sit down, prop her feet up, and stand at will. *Id*. When her attorney asked some follow-up questions, Ms. Bishop reiterated her statements from the 2023 Work Activity Report. *Tr. 811-813*. The ALJ did not sufficiently address whether the accommodations meant that Ms. Bishop rebutted the SGA presumption.

As for meeting the earnings requirements of SGA, Ms. Bishop barely cleared the bar. The regulatory earnings threshold per quarter was $4,050.00 (in 2022) and $4,410.00 (in 2023). https://www.ssa.gov/oact/cola/sga.html/; *Tr. 766-768*. Ms. Bishop was $76 over in the second quarter of 2022,[8] $401 over in the fourth quarter of 2022, and $630 over in the first quarter of 2023. Although she *narrowly* met the threshold earnings requirement, a question remains as to whether she rebutted the presumption that she performed SGA.

The record is unclear because the ALJ gave little attention to the factors associated with rebutting the presumption. The ALJ apparently assumed that other teachers or workers were afforded the same accommodations as Ms. Bishop. *Tr.*

---

[8] She earned $4,126.00, $4,451.00, and $5,040.00, respectively. *Tr. 766-768*.

*768-769*. Ms. Bishop testified that this was not correct. *Tr. 812*. The ALJ also assumed that other workers were allowed to miss work or call out sick, and he assumed that Ms. Bishop, despite the accommodations, was able to fulfill all the duties of the job. *Id*. He also assumed that Ms. Bishop was *not* paid for the time she missed work: "Had she not missed work . . . her earnings would be even more than what is shown above." *Tr. 769*. The record does not support this conclusory statement.

The ALJ also discredited Principal Faught's statement that Ms. Bishop was given accommodations and that she would no longer be able to work the job due to her alleged disability. The ALJ reasoned that Principal Faught's statement was not related to the period at issue, because she only started serving as Ms. Bishop's supervisor in August 2023. If so, the ALJ should have obtained further opinion evidence about Ms. Bishop's work accommodations during the periods at issue in 2022 and 2023. He should have done more than "race through" his line of questioning at the hearing. This error was critical, because according to the Medical-Vocational Guidelines, Ms. Bishop would be disabled if she had a continuous 12-month period after her 50th birthday when she was not engaging in SGA.

The Eighth Circuit recognizes that whether a claimant has performed SGA is a fact-intensive question. For example, where a claimant missed a lot of work and had to take more frequent rest periods due to seizures, the Eighth Circuit found that

his work was not SGA. *Thompson v. Sullivan*, 928 F.2d 276, 278-279 (8th Cir. 1991). Like Ms. Bishop, medications were not effective for Thompson, and he increasingly could not perform his work tasks. *Id.* In *Thompson*, the court faulted the ALJ for not obtaining evidence to compare similar workers' duties. The ALJ made the same error here. Evidence showed that Thompson was paid the same even if he missed work; the ALJ here did not ascertain that about Ms. Bishop.

An ALJ must show his work; failure to do so frustrates meaningful judicial review.[9]  The ALJ failed to properly develop the evidence about SGA, admitted that he short-circuited his line of questions, and he made unsupported assumptions about missing facts. Therefore, reversal is required.

## IV.   Conclusion

Because the ALJ's step one decision is not supported by substantial evidence, the decision to deny benefits should be reversed.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

IT IS SO ORDERED 16 August 2024.

_____
UNITED STATES MAGISTRATE JUDGE

---

[9] *Smajic v. Berryhill*, No. 4:17-CV-02474-SNLJ, 2019 WL 183980 at *11-12 (E.D. Mo. Jan. 14, 2019); *Guess v. Kijakazi*, No. 4:20-CV-00887-JTR, 2021 WL 5983193 at *9, n.6 (E.D. Ark. Dec. 17, 2021).